Matter of Greenberg
2026 NY Slip Op 03672
June 10, 2026
Appellate Division, Second Department
Per Curiam
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of Julia Greenberg, a suspended attorney. Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts, petitioner; Julia Greenberg, respondent. (Attorney Registration No. 4379236)

Supreme Court of the State of New York, Appellate Division, Second Judicial Department
Decided on June 10, 2026
Hector D. Lasalle, P.J.
Mark C. Dillon
Colleen D. Duffy
Betsy Barros
Francesca E. Connolly, JJ.

David W. Chandler, Brooklyn, NY, for petitioner.
Julia Greenberg, Brooklyn, NY, respondent pro se.

The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on May 3, 2006. By decision and order on motion dated April 5, 2024, the respondent was directed to show cause why a final order of suspension, censure, or disbarment should not be made based on her conviction of a serious crime. By the same decision and order on motion, the respondent was suspended immediately from the practice of law pursuant to Judiciary Law § 90(4)(f) and 22 NYCRR 1240.12(c)(2)(ii), as a result of her conviction of a serious crime.
Per Curiam.

[*1]
Per Curiam.

OPINION & ORDER
The respondent was convicted, after a jury trial in the United States District Court for the Southern District of New York, before the Honorable J. Paul Oetken, of conspiracy to commit immigration fraud, in violation of 18 USC § 371. By decision and order on motion dated April 5, 2024, the respondent was suspended immediately from the practice of law pursuant to Judiciary Law § 90(4)(f) and 22 NYCRR 1240.12(c)(2)(ii), as a result of her conviction of a serious crime. This Court further directed the respondent to show cause at a hearing before the Honorable Charles J. Thomas, as Special Referee, why a final order of suspension, censure, or disbarment should not be made based on her conviction of a serious crime. After a hearing conducted on May 20, 2024, the Special Referee filed a report dated September 24, 2024, setting forth his findings and concluding that the respondent had not demonstrated why a final order of suspension, censure, or disbarment should not be made. The Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts now moves to confirm the Special Referee's report and to impose such discipline upon the respondent as the Court may deem just and proper.
The Criminal Conviction
On February 18, 2021, a sealed superseding indictment was filed in the United States District Court for the Southern District of New York, entitled United States of America v Mosha, et al., which charged the respondent and co-conspirators with one count of conspiracy to commit immigration fraud, in violation of 18 USC § 371, in connection with fraudulent asylum applications and affidavits prepared and submitted to the United States Citizenship and Immigration Services [*2](hereinafter USCIS), in violation of 18 USC § 1546(a).
Russian America, a company assisting clients seeking visas, asylum, and citizenship in the United States, advised clients regarding proceedings before USCIS officers and immigration judges. Between in or about August 2018 and December 2020, the respondent received referrals from co-conspirators connected with Russian America and prepared and encouraged certain clients to lie under oath during interviews with USCIS officers regarding their fraudulent asylum claims. The respondent accompanied and represented these clients during their asylum interviews and proceedings, during which the clients made false claims that the respondent understood to be untrue. Specifically, the respondent was charged with representing a client identified as CS-3, a confidential source who was acting at the direction of law enforcement, in a sworn interview before a USCIS asylum officer, knowing that false information was submitted. As charged in the indictment, the respondent was aware that CS-3's asylum application contained false information regarding his sexual orientation and that CS-3 was in fact a heterosexual male, though he claimed he was persecuted in Ukraine for being a homosexual male, and the respondent coached CS-3 to answer questions in certain ways when interviewed under oath by the asylum officer. In or about December 2020, the respondent conducted a mock asylum interview with CS-3, advised CS-3 how to falsely answer certain questions, and instructed him to dress and appear in a manner that comported with the respondent's estimation of the appearance of a homosexual male.
The respondent was charged with representing a second client, identified as CS-1, another confidential source who also acted at the direction of law enforcement. According to the indictment, CS-1, at the direction of co-conspirators, created a blog criticizing the Ukranian government. The blog was the basis for CS-1's asylum application and was, in fact, ghostwritten by certain co-conspirators. CS-1 also falsely claimed in his asylum application that he was assaulted to the point of unconsciousness in Ukraine when he was overheard speaking Russian. However, no such incident occurred. In or about September 2019, the respondent prepared CS-1 to lie under oath to a USCIS officer, knowing that CS-1 would convey false information about the blog, his persecution in Ukraine, and the fabricated incident in which he was assaulted for his status as a Russian-speaking Ukranian.
On December 19, 2022, the respondent was convicted, after a jury trial in the United States District Court for the Southern District of New York, before the Honorable J. Paul Oetken, of conspiracy to commit immigration fraud, in violation of 18 USC § 371. On September 7, 2023, the respondent was sentenced to three months of imprisonment with one year of post-release supervision and a fine of $7,500.
The Hearing Record
A hearing was held on May 20, 2024. The Grievance Committee entered four exhibits into evidence. The respondent submitted seven character letters and testified on her own behalf.
The respondent testified that she grew up in Brest, Belarus and came to the United States pursuant to a J-1 student visa to attend law school. According to the respondent, she could have applied for asylum but chose not to. During a certain time period, the respondent did not have legal status and stated she was having nightmares of being deported to Belarus. After graduating from law school, the respondent practiced international law at a law firm in Manhattan, and in 2008 she opened her own practice solely focusing on immigration law.
As to the circumstances which led to her conviction, the respondent testified that she was referred cases by an organization called Russian America. As to the first client, CS-1, the respondent testified that right before the hearing, he confessed to her that he had not written a political blog about the president of Ukraine but the blog was instead written by someone who represented Russian America, Yuri Mosha. CS-1 also told the respondent that CS-1's affidavit that he had already submitted to the asylum office was rewritten by Mosha five times. Additionally, CS-1 hinted to her that information provided in the affidavit was grossly exaggerated. The respondent testified that instead of ending her representation due to her client informing her of fraud, she continued to represent CS-1 because she did not want to abandon her client.
The respondent maintained at her hearing that she was not a "fraudster" and had "never lied" despite acknowledging that both the government and the judge presiding over her criminal trial concluded otherwise.
As to the second client, CS-3, the respondent testified that he was referred to her after already filing his affidavit seeking asylum, and he hired the respondent to represent him at his [*3]interview. The respondent testified that CS-3 told her that he was homosexual and was persecuted in Ukraine. The respondent had three meetings with him and testified that there were many instances wherein he tried to hint that he was not homosexual. According to the respondent, she was prosecuted, essentially, for not telling client CS-3 that she would not represent him because she did not believe that he was "gay."
The respondent testified that what she was "accused of and believe [sic] found guilty of is closing my eyes on what others believe were obvious lies." The respondent testified that she regrets her actions but she believes that throughout her practice she was always looking after her client's best interests. Further, the respondent testified that what is interesting in her case is that the clients were not real. The two clients that were referred to the respondent were part of a government sting operation targeting Russian America.
In conclusion, the respondent testified,
"I want to say that I regret my—what I've done. I think looking at it now from everything that I went through I certainly understand the government's position. Lawyers who help clients knowing that they're lying do, in fact, affect our asylum system because lawyers know much more. And I think for the government it's much easier to fish out a lie if the person does not have the privilege of legal representation. I wish that I—I wish that I thought the same way when those two confidential sources came to my office. The only thing I can say in my defense is that I had tremendous fear of causing a client to be deported, removed to a different country because of my personal experience. And it was easy for me to just try to think, to believe a client than to kind of think rationally, investigate and, ultimately, abandon a client knowing that there will be deportation consequences in our system if you put forward an asylum application that is false you'll be placed in removal proceedings."
The respondent provided seven character letters from six individuals in support of her good character and reputation.
The Special Referee's Report
In his report dated September 24, 2024, the Special Referee concluded that, given the respondent's conviction of conspiracy to commit immigration fraud, the respondent has not demonstrated why a final order of public discipline should not be made.
In mitigation, the Special Referee noted the respondent's experience when she came to the United States from Belarus and her fear of being deported, that the respondent had served three months of incarceration, and that the respondent's character letters spoke of her good character and reputation.
The Grievance Committee moves to confirm the Special Referee's report. By affirmation dated October 11, 2024, the respondent joins the Grievance Committee's request to confirm the report of the Special Referee and asks the Court for leniency. The respondent requests the Court consider in mitigation that she has no prior disciplinary history and has dedicated her legal practice to serving the immigrant population.
Findings and Conclusion
We find that the Special Referee properly concluded that the respondent failed to meet her burden of establishing why this Court should not issue a final order of suspension, censure, or disbarment based upon her conviction of conspiracy to commit immigration fraud, in violation of 18 USC § 371. In view of the evidence adduced, the Grievance Committee's motion to confirm the Special Referee's report is granted.
In determining the appropriate measure of discipline, notwithstanding the mitigating factors discussed above, the Court finds that the respondent, while aware that false information was
submitted within her clients' asylum applications, coached those clients how to act and respond orally during their respective asylum interviews based on the false information. The respondent also knowingly perpetrated fraud upon USCIS and was found guilty by a jury of such conduct. Under the totality of the circumstances and given the serious nature of the respondent's misconduct, we find that disbarment is warranted.
LASALLE, P.J., DILLON, DUFFY, BARROS and CONNOLLY, JJ., concur.
ORDERED that the Grievance Committee's motion to confirm the Special Referee's report is granted; and it is further
ORDERED that the respondent, Julia Greenberg, a suspended attorney, is disbarred, [*4]effective immediately, and her name is stricken from the roll of attorneys and counselors-at-law; and it is further,
ORDERED that the respondent, Julia Greenberg, shall continue to comply with this Court's rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15); and it is further,
ORDERED that pursuant to Judiciary Law § 90, effective immediately, the respondent, Julia Greenberg, is commanded to continue to desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding herself out in any way as an attorney and counselor-at-law; and it is further,
ORDERED that if the respondent, Julia Greenberg, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in her affidavit of compliance pursuant to 22 NYCRR 1240.15(f).
ENTER:
Darrell M. Joseph
Clerk of the Court